## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 22-cr-358-RC |
| | : | |
| v. | : | 40 U.S.C. § 5104(e)(2)(G) |
| | : | |
| KATELYN BARTOW, | : | |
| | : | |
| | : | |
| Defendant. | : | |

### STATEMENT OF OFFENSE

Pursuant to Federal Rule of Criminal Procedure 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Katelyn Bartow, with the concurrence of her attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt.

#### *The Attack at the U.S. Capitol on January 6, 2021*

1.     The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

2.     On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.

3.     On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States

Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m.  Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4.     As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

5.     At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building.  The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.

6.     At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd

encouraged and assisted those acts.  The riot resulted in substantial damage to the U.S. Capitol, requiring the expenditure of more than $1.4 million dollars for repairs.

7.      Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured.  The proceedings resumed at approximately 8:00 p.m. after the building had been secured.  Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *Katelyn Bartow's Participation in the January 6, 2021 Capitol Riot*

8.      The defendant, Katelyn Bartow, lives in Hadley, NY. On January 5, 2021, the defendant traveled to Washington, DC with her brother, Travis Bartow, and several other family members. On that day, she sent a Facebook message to a friend and asked if he would be willing to bail her out the following day.

9.      On January 6, 2021, the defendant and her family planned to attend former President Trump's rally on the Ellipse. After the rally, the group marched towards the United States Capitol with a large crowd of people. Once on Capitol Grounds, the defendant and her brother separated from their family to continue towards the Capitol Building.

10.     The two used the stairs underneath the scaffolding built for the Presidential Inauguration to reach the Upper West Terrace of the Capitol Building. Once she reached the top of the stairs, the defendant stood on top of a stone wall and recorded a video of herself as she rallied other rioters up the stairs. The defendant later sent a voice message on Facebook where she said that she encouraged these rioters because they were hesitant, and she wanted to "get people up" to the terrace. The defendant then proceeded to the northwest area of the terrace where she helped other rioters as they scaled the wall to the terrace.

11.     After assisting rioters at the wall, the defendant entered the United States Capitol via the Senate Wing Door at 2:24 p.m. The door and adjacent windows were previously damaged by other rioters. The defendant followed the hallway south and made her way to the Capitol Visitor Center. Once there, officers confronted the defendant and the other rioters to stop their movement through the Capitol. As the officers tried to get the rioters to leave the area, the defendant stood between the rioters and the police officers. Of this time frame, the defendant later messaged a friend and said she "[g]ot in a tousle [sic] in the basement with some cops. Then I ended up organizing everyone and it was wild!"

12.     The defendant made her way back to the Senate Wing Door where she stood with a large group of rioters inside the lobby area for several minutes. While there, the defendant chanted "U.S.A." along with the crowd. The defendant left the Capitol Building at 2:54 p.m. by climbing through a window.

13.     After leaving the Capitol Building, the defendant is captured standing in front of a mass of rioters who had taken over the Lower West Terrace of the Capitol. The defendant posted the image on Facebook along with the caption: "It is better to die fighting for freedom than to live

as a slave. It is better to die a prisoner fighting for what is right than to die a follower of the enslaver."

       14.    After the events of January 6, the defendant sent numerous voice and text messages through her Facebook account about her experience. In several messages, she said that she had "stormed" the Capitol, which she "completely agreed" with doing. In one comment, she said "there wasn't any violence. Just scaling of the building and breaking the door. It was badass and awesome." In another comment, however, the defendant reported that she "broke up a huge brawl" with police officers in the Capitol. In one voice message, she described the events of January 6 as "sick" and "freaking badass" while laughing.

       15.    The defendant engaged in parading demonstrating, or picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). Specifically, the defendant knew at the time she entered the U.S. Capitol Building that she did not have permission to enter the building and the defendant paraded, demonstrated, or picketed.

                                    Respectfully submitted,

                                      MATTHEW M. GRAVES
                                      United States Attorney

                By:     */s/ Andrew Haag*
                       Andrew S. Haag
                       Assistant United States Attorney

## DEFENDANT'S ACKNOWLEDGMENT

I, Katelyn, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 7·15·23

_____
Katelyn Bartow
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 7-14-23

_____
Jeremy Sporn
Attorney for Defendant